[S. F. No. 15509.  In Bank.—December 31, 1936.]

HOWARD E. KENTFIELD et al., Plaintiffs, v. EDWARD E. KENTFIELD, Defendant and Respondent; FLORENCE E. KENTFIELD CANON et al., Appellants.

Charles A. Wetmore for Appellants.

A. G. Goodrich and Frank C. Cleary for Respondent.

SEAWELL, J.—The action which gives rise to this appeal was brought by the trustees of a trust agreement in which Edward E. Kentfield was trustor, praying for the settlement of certain accounts, fixing the compensation of said trustees and for instructions as to whether or not an accumulating fund created for the purpose of securing the payment of a

certain indebtedness owing by Edward E. Kentfield to his son John Kentfield, since deceased, as evidenced by six promissory notes executed by the father to the son, should be distributed to the father, the sole heir of said son, or whether, as contended by appellants, it should be held by the trustees for the future support and maintenance of said Edward E. Kentfield during the remainder of his life, and upon his death the unexpended remainder should go to the four children of said Edward E. Kentfield, as provided in said trust agreement. The notes were distributed to the father by the probate court, and the trial court herein held that said promissory notes were not extinguished by merger or otherwise and gave judgment that the trustees pay and deliver all of the balance of the funds remaining in their hands, to wit, the sum of $10,221.26, to the father, as all the other children for whose mutual benefit the fund was created had been satisfied. It is from that part of the judgment decreeing that the indebtedness represented by the promissory notes, is entitled to payment thereof from the trust fund, that the defendant Edward E. Kentfield, as the holder of said notes, is entitled to payment thereof from the trust fund, that the two daughters have appealed.

Edward E. Kentfield, the father of Florence E. Kentfield, Ethel C. Kentfield, John Kentfield and Howard E. Kentfield, was the party of the first part, and said four children were parties of the second part, to a trust agreement executed April 18, 1928. Said trust instrument, by consent of the parties thereto, was intended to and finally did terminate and abrogate a prior trust agreement between said parties executed October 27, 1921. By said 1928 trust agreement its trustees succeeded to all the property, real and personal, then in the possession of the former trustees, including certain warrants of Reclamation District No. 1500, which were at said time on deposit for exchange into warrants of the Sacramento and San Joaquin Drainage District. The exchanges of these warrants afterward made by the trustees for bonds are not material herein, other than that the proceeds of said warrants and bonds and other property, both real and personal, of said Edward E. Kentfield furnished the original *corpus* of the present trust fund. The two agreements were drawn to accomplish the same purpose and were alike in all substantial features. For some time prior to the execution of the first

trust in 1921 Edward E. Kentfield had been and was at said time indebted to his two daughters and two sons, all of whom were parties to said trust agreement, on account of the shares of an estate which came to him and them by inheritance. He had used their property at various times and executed to them his promissory notes. His indebtedness to his two daughters was the sums of $3,165 and $10,887, respectively, and to his son John the sum of $10,770.92, and to his son Howard the sum of $5,186.12. Apart from his children he had other general creditors. The original estate, which was transmitted through his mother, is estimated to have been approximately of the value of $500,000. The specific fortune originally allotted to each child does not appear. The sums above set out were the amounts agreed upon in 1921, and the correctness of said figures is not questioned. The estate, which was in the control of the father for a number of years, became greatly reduced in value. Much of the valuable property was destroyed by the San Francisco fire of 1906, and in an attempt to restore it to income property he borrowed large sums of money and was subsequently forced to sacrifice valuable investments to meet pressing demands, with the result that the family inheritance became almost entirely depleted. The amount in controversy, approximately $10,000, represents all that remains of the original estate after the payment of large indebtednesses. Whether the bulk of the inheritance was lost through injudicious investments, improvidence, or was caused by unfortunate conditions not fairly chargeable to mismanagement are questions not now important.

The two daughters, in 1921, filed actions against their father and levied attachments on all of the property standing in his name. It was because of these actions by the daughters and the indebtedness of the father to his two sons and others that said first trust agreement was executed. Disagreements as to the administration of the 1921 trust agreement led to its termination and the execution of the present instrument. Before the execution of the present agreement in 1928, the indebtedness of the father to the daughters had been entirely paid by the sales of property, and they had no further direct monetary interest in the matter. Notwithstanding the satisfaction of their claims, they appear as parties to the trust agreement, and they are the only appellants on this appeal.

Prior to the death of John the entire indebtedness to Howard had been discharged and the indebtedness to John had been reduced by the payment of substantial amounts. Besides, the estate, a small one, has paid in the administration of the trust several thousands of dollars to the trustees and attorneys. The last person of the group of children for whose benefit the trust was unquestionably executed who had any monetary interest in its further administration was John Kentfield, who has been for some time past deceased. His estate descended upon his father, who, by the way, has since died, and the father's estate is now in course of administration Doubtless he died intestate and made no assignment of his interest or any part thereof. No claim is made that he did. The substitution of his administrator as respondent in the appeal has been entered.

There is no doubt that the trust agreements were drawn and entered into at the insistence of the daughters, who had his property under attachment, joined in by the brothers for their protection. That the main purpose, if not the sole purpose, of said trust agreements was to secure the payments set forth therein is made apparent by the language of the agreements themselves and the manner of the administration of the same. By said trust agreement of 1928 the trustees were given absolute power over and control of the property of the father, to handle it as their judgment should direct. It is one that no one in the father's position would willingly enter into. It provided that from the funds of said trust the trustees should pay the balance due from the father to his two sons and that they shall pay to the said father monthly a sum sufficient for his support and maintenance, provided there are sufficient funds in said trust to pay said indebtedness to said sons; they shall continue to pay said sums for his support, provided that the trust fund "shall never be so far depleted thereby as to reduce the same below the amount necessary to pay and satisfy the said indebtedness to the said John Kentfield and Howard E. Kentfield".

It is further provided that upon the death of the father the trustees shall pay said sons the balance due them, and upon full payment of said indebtedness the balance of the trust fund shall be divided equally between his said four children. If any of his said children shall die before said distribution, the wife or issue of such child, if any there be,

shall take the share of such deceased child, and if such deceased child of said Edward E. Kentfield shall leave no wife or issue, the share of such deceased child shall go to the person or persons as may be designated by the will of such deceased child, and in default of such designation the same shall go to the surviving beneficiaries named in the trust agreement. It is also provided that "In no event shall the trust hereby created extend beyond the lives of the parties hereto." It is further provided that the trustees shall use their best judgment as to the amount of money necessary for the support of said Edward E. Kentfield and the amount that can be paid for that purpose without reducing the trust fund below the amount due said two sons. In consideration of the premises the father and said two sons released said two daughters from all future liability for the support of the father, and said two sons agreed that if for any reason the funds of the trust became insufficient to support the father they would provide for his support and release said two daughters from all liability therefor. The said sons also agreed to save said daughters free from all costs and expenses that might be incurred in any action necessary to be commenced to recover any and all property held in the possession of the trustees by virtue of the 1921 trust. ■ No agreement entered into by the children to pass the responsibility of supporting a parent who is unable to support himself (sec. 206, Civ. Code) to another member of the family or to a stranger can relieve such child of the obligation which the law places upon him or her. Whatever agreement said children may enter into as between themselves would not relieve them of a duty imposed by law. ■ Neither may the children make a trust agreement by which the estate of a parent will be absorbed by them to the exclusion of creditors of the estate. In the instant case the estate of the deceased parent will be distributed in the precise manner as if no trust arrangement had been made. Coincidentally, it will also be distributed in accordance with the provisions of the trust agreement, due regard being given to the creditors of Edward E. Kentfield, deceased. Whether the contending daughters receive their one-fourth part of their father's estate under the provisions of the trust agreement or recover a one-fourth part from the probate court in which said estate is pending makes no practical difference. ■ The trust is certainly termi-

nated by the death of the father, if for no other reason, and his debt to the son was paid by the law of inheritance, and the parent is no longer in need of support.

■ By the laws of succession the father was at once vested with the title to all of his son's property upon the latter's death. He certainly succeeded to something more than the mere paper upon which his indebtedness was recorded. The death of a son without heirs during the lifetime of the father was not even a contingency that was considered by the parties to the said agreement and the laws of inheritance and succession cannot be written out of the statute by the application of artificial rules or super-technical construction, or by strained interpretation which, if indulged, would mean the denial of a fundamental right guaranteed by statute. ■ There is nothing in the agreement which attempts to strip the father of his right to inherit property, and certainly the law will not write the forfeiture of a fundamental right into the agreement.

There is testimony in the record to the effect that long periods of time passed during which he was without means of support. The agreement made provision for his support. but it was conditional and depended upon the value of the trust property maintaining a level equal to the amount of indebtedness which it guaranteed. If said agreement denied him the right of inheritance, then there was nothing left for him except support, subject to the will of others. Section 206 of the Civil Code, as above pointed out, compels support where children are able to furnish it.

The case is one wholly on the equity side of the law and in such cases the court has broad equity powers. Looking at the entire case, we are in accord with the court's decree. The case, for reasons before suggested, appears to be moot so far as any practical results are involved.

The judgment is affirmed.

Thompson, J., Edmonds, J., and Curtis, J., concurred.

Rehearing denied.